UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JUAN ARIAS RAMIREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 4:22-CV-1077 RLW |
| COCA COLA COMPANY OF NORTH AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Coca Cola Company of North America's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[1] Plaintiff Juan Arias Ramirez, who is proceeding in this matter pro se without the assistance of counsel, opposes the motion.[2] The motion is fully briefed and ripe for review. For the reasons that follow, the Court grants in part and denies in part Defendant's motion to dismiss.

### *I. Background*

On November 14, 2022, Plaintiff Juan Arias Ramiez filed an Amended Employment Discrimination Complaint (hereinafter "Complaint") against Coca Cola Company of North America ("Coca-Cola" or "Defendant"). The Complaint, which was filed on a form complaint

---

[1]Plaintiff identifies the defendant in this case as "Coca Cola Company of North America." (ECF No. 20 at 1). In its Motion to Dismiss, the defendant states that its proper name is The Coca-Cola Company.

[2]Plaintiff filed a three-page "Response to Defendant's Motion to Dismiss" (ECF No. 35), and a 16-page "Memorandum in Support of Plaintiff's Motion to Set Aside Defendant's Motion to Dismiss," which the Court construes as a Memorandum in Opposition to Defendant's Motion to Dismiss (ECF No. 36). Under the Local Rules, Plaintiff was allowed to file a single memorandum in opposition to Defendant's motion. See E.D. Mo. L.R. 4.01(B). Plaintiff must follow the applicable rules of this Court. In the future, the Court will strike Plaintiff's filings that do not comply with the Local Rules.

with attachments, purports to bring claims against Defendant pursuant to 42 U.S.C. § 1981. (ECF No. 20 at 2). Plaintiff asserts claims of retaliation, disparate treatment, harassment, and constructive discharge. (ECF No. 20 at 4). Plaintiff alleges Coca-Cola discriminated against him against based on his race – Afro-Hispanic. (ECF No. 20 at 5). For relief, Plaintiff requests punitive damages, lost wages, "rewards" for emotional distress, pain and suffering, and "a clean employment record." (ECF No. 20 at 7).

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Blomker v. Jewell, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted). The facts alleged must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555–56; Fed. R. Civ. P. 8 (a)(2). The principle that a court must accept the allegations contained in a complaint as true is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id.

An employment discrimination complaint does not need to contain specific facts establishing a prima facie case to survive a motion to dismiss for failure to state a claim. See Swierkiewicz v. Sorema, 534 U.S. 506, 510–12 (2002); Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1014 (8th Cir. 2013). The elements of a prima facie case are relevant, however, as they are "part of the background against which a plausibility determination should be made." Blomker, 831 F.3d at 1056 (citing Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 57 (1st Cir. 2013)).

A complaint filed by a pro se plaintiff should be liberally construed. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). See also Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (holding that in civil rights actions a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss). The complaint, however, "still must allege sufficient facts to support the claims advanced." Stone, 364 F.3d at 914 (citing Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded."); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.")). The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002).

### *III. Plaintiff's Factual Allegations*

Plaintiff attached to the form Complaint a lengthy narrative in which he details the facts of his claims. (ECF No. 28, 10-27). Plaintiff colorfully describes events that took place at Coca-Cola's production facility in Truesdale, Missouri between August 20, 2021, the day Plaintiff was hired as an operations supervisor, and March 21, 2021, the day he resigned.

In his narrative, Plaintiff makes sweeping allegations about racial tensions at the production plant where he worked. Plaintiff describes a number of incidents involving violations of company rules by other employees at the plant and the discipline they did or did not receive. A large portion of the Complaint is devoted to describing the difficult relationship Plaintiff had with Stacie Dick, a fellow supervisor, who is a white woman. According to Plaintiff, Ms. Dick was the senior supervisor and in charge of training Plaintiff and another employee on his shift. There are a number of allegations in the Complaint regarding how Ms. Dick did not treat Plaintiff fairly because she had an animus against Plaintiff based on his race. He alleges rules in the production plant were not enforced evenly and fairly, and dark-skinned employees, including himself, were treated differently than white employees by Ms. Dick and others. Plaintiff alleges that he complained to supervisors when white employees were violating rules, but they were not disciplined. Dark-skinned employees, however, were disciplined for violating the same rules.

Plaintiff also alleges that the environment at the production plant was highly sexualized. He details a number of conversations between employees involving sexual overtones and innuendos. Plaintiff admits that he had at least two such conversations with Alexandria Andert, a fellow supervisor. Plaintiff alleges, however, that Ms. Andert openly flirted with him, and he was never told that his comments or advances were unwanted. Plaintiff also alleges some employees

4

were dating other employees, and Ms. Dick was in a sexual relationship with one of her subordinates and engaged in inappropriate sexual conduct at work.

Plaintiff alleges that sometime in late 2020 or early 2021, Ms. Dick told other production supervisors that Plaintiff was sexually harassing Ms. Andert. According to Plaintiff, Ms. Dick characterized him as a harasser and tainted his reputation. She also asked other women "to report [Plaintiff]." (ECF No. 16). He alleges Ms. Dick did this because his race made her uncomfortable. In early 2021, Ms. Dick reported to management that Plaintiff was sexually harassing Ms. Andert. Plaintiff alleges Ms. Dick made the sexual harassment complaint because of his race. "It was done due to racial preference and not adherence to company policy." (ECF No. 20 at 24). Plaintiff does not deny having sexually suggestive conversations with Ms. Andert, but he alleges that his comments were welcome and Ms. Andert encouraged his conduct.

Plaintiff alleges he was investigated for sexual harassment, but Coca-Cola did not fully and fairly investigate the charge. Plaintiff alleges management saw him as "a black man hunting white women in the rural Midwest and had to be stopped." (ECF No. 20 at 22). He further alleges, "Local management did not question the white women's behavior or what it had caused [Plaintiff]." (Id.). Plaintiff was suspended for four days for pursuing Ms. Andert, although he maintains his advances were welcome. Plaintiff also alleges he received a greatly reduced performance bonus compared to his peers. Plaintiff further alleges white employees, including Ms. Dick, engaged in sexually inappropriate conduct in the workplace but were not investigated or disciplined, even when he reported their conduct to management.

A few weeks following his suspension, Plaintiff alleges he was again accused of sexually harassing Ms. Andert. Plaintiff was told by his supervisor that he was being suspended. According to Plaintiff, his supervisor told him that what happened between Plaintiff and Ms. Andert had

5

gotten out of hand, and they needed to protect Ms. Andert, a white woman. Instead of facing suspension and another sexual harassment investigation, Plaintiff resigned. Plaintiff alleges he "had no place in the Coca-Cola's network unless it was to obey and be undermined by the white employees working there." (ECF No. 20 at 23).

In addition to quitting, Plaintiff alleges that he was so distraught "over the fact that he was telling the truth and was penalized over people who were committing misconduct" that he attempted suicide and shot himself in the chest with a 9mm pistol. Plaintiff also alleges he was replaced by a white employee.

## IV. Discussion

Plaintiff brings all the claims in his Complaint pursuant to 42 U.S.C. § 1981, which prohibits unlawful discrimination based on race. Section 1981, which guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts," provides a federal remedy against racial discrimination in private employment. CBOCS W., Inc. v. Humphries, 553 U.S. 442, 445-46 (2008) (quoting 42 U.S.C. § 1981(a)). Section 1981 has been found to incorporate claims for disparate treatment, retaliation, and harassment in the context of employment discrimination, and such claims are typically analyzed under the same standard as Title VII claims. See Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 902 (8th Cir. 2015) (considering discrimination claims); Ellis v. Houston, 742 F.3d 307, 319 (8th Cir. 2014) (considering retaliation claims); Eliserio v. United Steelworkers of Am. Loc. 310, 398 F.3d 1071, 1076 (8th Cir. 2005) (considering hostile work environment claims).

That said, to establish a claim of race discrimination under § 1981, a plaintiff must show race was the "but for" reason for the discrimination, and not just a motivating factor. Comcast

6

Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1014 (2020).  This element remains constant throughout a suit, and it applies to allegations in the pleading.  Id.

### A.    Disparate Treatment

Defendant moves to dismiss Plaintiff's claim of disparate treatment.  Defendant argues Plaintiff fails to allege he suffered an adverse employment action.  Defendant also argues Plaintiff fails to state a claim because he admits in his Complaint that he was not meeting Defendant's legitimate job expectations.

To state a claim of disparate treatment under § 1981, Plaintiff must allege that (1) he is a member of a protected class; (2) Coca-Cola intended to discriminate on the basis of race; and (3) "the discrimination on the basis of race interfered with a protected activity as defined in § 1981." Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004); see also Elmore v. Harbor Freight Tools USA, Inc., 844 F.3d 764, 766 (8th Cir. 2016).  An element of a plausibly pleaded disparate treatment claim is that the plaintiff suffered an adverse employment action.  Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 903 (8th Cir. 2015) (citing Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 681 (8th Cir. 2012)).  Adverse employment action is defined as "a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013). "[M]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action."  Id.; see also Muldrow v. City of St. Louis, Mo., 30 F.4th 680, 688 (8th Cir. 2022), cert. granted in part, 143 S. Ct. 2686 (2023).

7

In his Complaint, Plaintiff alleges that he was more severely punished than similarly situated white employees, and that policies used against him, an Afro-Hispanic man, were not used against white employees. More specifically, Plaintiff alleges that Coca-Cola suspended him and "he received a greatly reduced performance bonus compared to peers."[3] (ECF No. 20 at 22). Suspensions and reductions in pay, such as withholding bonuses, can be adverse employment actions that form the basis of an employment discrimination claim, as they do affect a tangible working condition. Jackman, 728 F.3d at 804; Arendale v. City of Memphis, 519 F.3d 587, 603 (8th Cir. 2008) (recognizing suspension can constitute an "adverse employment decision" in an action under 42 U.S.C. § 1983); see also Bell v. Runyon, 242 F.3d 373, at *1 (8th Cir. Nov. 15, 2000) (unpublished per curiam) (indicating suspension is a recognized adverse employment action in race discrimination case). The Court finds Plaintiff has alleged an adverse employment action in his Complaint.

Defendant also moves to dismiss Plaintiff's disparate treatment claim on the ground that even if Plaintiff alleges adverse employment actions, these actions were taken in response to his misconduct, not his race, and Plaintiff was not meeting legitimate job expectations. More specifically, Defendant argues that Plaintiff admits in the Complaint that he was disciplined for sexual harassment. Plaintiff does not deny that he was suspended following a sexual harassment investigation, but he alleges he was the target of sexual harassment investigations based on his

---

[3] In his Memorandum in Opposition to Defendant's Motion to Dismiss, Plaintiff points to other adverse employment actions that are not alleged in the Complaint, including among other things the loss of promotion opportunities. "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss[.]" Gallagher v. City of Clayton, 699 F.3d 1013, 1022 (8th Cir. 2012). The Court does not consider facts not alleged in the Complaint in deciding Defendant's Motion to Dismiss. In arguing that he suffered an adverse employment action, Plaintiff also points to the ridicule, badgering, and humiliation he allegedly endured at work. The Court finds these allegations relate to Plaintiff's claim of harassment, not disparate treatment, and the Court will address these allegations below.

race. He alleges a fellow supervisor accused him of sexually harassing another employee because he is an Afro-Hispanic man. He also alleges the investigation was biased and flawed, and the conduct in which he engaged was not unwelcome. Plaintiff further alleges that white employees engaged in the same or similar conduct and were not disciplined or even investigated, despite the fact that they were reported.

Later in these proceedings, Defendant may offer accusations of sexual harassment and findings from the investigation(s) as its legitimate non-discriminatory reasons for suspending Plaintiff and reducing his bonus. Nelson v. Lake Elmo Bank, 75 F.4th 932, 937 (8th Cir. 2023) (examining on summary judgment whether alleged sexual harassment was legitimate non-discriminatory reason for firing). To defeat a motion to dismiss, however, Plaintiff need not plead facts establishing a prima facie case of discrimination under McDonnell Douglas, let alone rebut the Defendant's proffered legitimate non-discriminatory reason for the alleged discrimination. Hager, 735 F.3d at 1014.

Defendant further argues that white employees, who Plaintiff alleges engaged in the same conduct but were not disciplined, are not similarly situated because they were not accused of sexual harassment. Defendant's argument raises a disputed factual issue. Plaintiff alleges in his Complaint that he complained to management that a fellow supervisor had engaged in sexual conduct at work. Furthermore, the case Defendant cites in support of this argument, Twymon v. Wells Fargo & Co., 462 F.3d 925, 936 (8th Cir. 2006), was decided on summary judgment following discovery. The Court finds that the evaluation of allegedly similarly situated employees is more appropriate for a motion for summary judgment.

Defendant's motion to dismiss Plaintiff's claim of disparate treatment is denied as being without merit. Plaintiff's Complaint states a plausible claim for disparate treatment under § 1981.

9

B.     **Retaliation**

Defendant also moves to dismiss Plaintiff's claim of retaliation under § 1981 and argues essential factual allegations are missing from Plaintiff's Complaint.  To state a claim of retaliation under § 1981, Plaintiff must allege the following: (1) a protected activity, (2) subsequent adverse employment action, and (3) a causal relationship between the two.  Williams v. United Parcel Serv., Inc., 963 F.3d 803, 807 (8th Cir. 2020) (citing Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997)).  "A causal relationship exists where the desire to retaliate was the but for cause of the adverse action."  (Id.) (cleaned up) (citing Sayger v. Riceland Foods, Inc., 735 F.3d 1025, 1030-32 (8th Cir. 2013)).

First, Defendant argues Plaintiff has not alleged that he engaged in a protected activity.  In the context of § 1981, protected conduct includes opposing discrimination because of race.  Id.  Defendant writes, "[Plaintiff] alleges he reported to Coca-Cola management his coworkers' violations of company policy related to sexual relationships, non-responsiveness by maintenance workers, and workers sleeping on the job."  (ECF No. 37 at 5).  Defendant argues these reports are not protected activities under § 1981 because none of the complaints involved opposition to discriminatory conduct or reporting discrimination based on race.  The Court concurs.

There are numerous allegations in the Complaint that Plaintiff complained to management about his co-workers' conduct and their purported violations of company policies.  While Plaintiff alleges these employees were white, Plaintiff does not allege that he raised complaints of racial discrimination.  There are also allegations in the Complaint that Plaintiff complained to management about sexual misconduct, including by his fellow supervisor, Ms. Dick.  While these complaints could be construed as complaints of sexual harassment and, therefore, might rise to the level of a protected activity under Title VII, they are not complaints of racial discrimination

10

protected by § 1981. Construing Plaintiff's complaint liberally, there are no allegations that Plaintiff engaged in protected activity that would support a claim of retaliations under § 1981. Defendant's motion to dismiss Plaintiff's claim of retaliation is granted.

**C.     Harassment**

Defendant also argues Plaintiff fails to state a claim of racial harassment under § 1981. To allege a hostile work environment claim under § 1981, Plaintiff must allege that (1) he belongs to a protected group, (2) he was subjected to unwelcome racial harassment, (3) the harassment was because of his race, and (4) the harassment was sufficiently severe or pervasive so as to affect "a term, condition, or privilege of [his] employment." Ellis v. Houston, 742 F.3d 307, 319 (8th Cir. 2014) (quoting Singletary v. Missouri Dep't of Corr., 423 F.3d 886, 892 (8th Cir. 2005)). The fourth element contains both objective and subjective components. Plaintiff must have perceived the harassment as severe, and the allegations must show "that a reasonable person would find the environment hostile or abusive." Id. (quotation omitted).

In his narrative, Plaintiff alleges the following incidents and comments were directed at him: (1) a fellow supervisor called him a "[b]oot licker who could not speak English," and later told him to "stop being a boot licker"; (2) other supervisors did not answer his calls for assistance on the walkie talkie radios or help with his training; (3) an employee told Plaintiff it would "be a shame if he was hurt in an accident by walking in the warehouse" and "that it would be a shame if someone called the plant manager and made [Plaintiff] lose his job"; (4) an employee yelled at Plaintiff that he was misspelling his name and threw a broom handle toward the ceiling; (5) other employees laughed at a comment Plaintiff made; and (6) he was called a liar by management. (ECF No. 20 at 12-13, 16, 17, 18, 21, 23). Defendant argues these allegations of harassment are not sufficiently severe or pervasive, and they are not alleged to be based on race.

11

"The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005). For that reason,

> [t]he standards for a hostile environment are demanding, and "conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." Alagna v. Smithville R-II Sch. Dist., 324 F.3d 975, 980 (8th Cir. 2003). When evaluating a hostile environment, we look at the totality of the circumstances, "including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." Vajdl [v. Mesabi Acad. of KidsPeace, Inc.], 484 F.3d [546,] 551 [ (8th Cir. 2007)].

Alvarez v. Des Moines Bolt Supply, Inc., 626 F.3d 410, 420 (8th Cir. 2010).

"More than a few isolated incidents are required," and the alleged harassment must be "so intimidating, offensive, or hostile that it poisoned the work environment." Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (quotation and citations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Al-Zubaidy, 406 F.3d at 1039 (quotations and citations omitted). "In fact, the Supreme 'Court implores lower courts to apply the demanding harassment standards to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Blomker, 831 F.3d at 1057 (quoting Al-Zubaidy, 406 F.3d at 1039)).

The Court has carefully examined the harassment allegations in the Complaint. While some of the comments and conduct Plaintiff describes are rude or inappropriate, construing the allegations liberally, the Court finds as a matter of law that they do not rise to the level of actionable harassment. See Blomker, 831 F.3d at 1057.

The Court further finds that Plaintiff fails to allege a causal connection between the alleged harassment and his race. On their face, none of the comments relate to race. "Bootlicker" is a generic term, and the Court declines to find the off-hand comment concerning Plaintiff's ability to speak English related to his race. Mensie v. City of Little Rock, 917 F.3d 685, 691 (8th Cir. 2019) ("Facially race-neutral statements, without more, do not demonstrate racial animus on the part of the speaker.") Under § 1981, Plaintiff must allege that the harassment was based on his race – race cannot be just a motivating factor for the harassment. Comcast Corporation, 140 S. Ct. at 1014. Plaintiff also fails to make the required connection between the other mistreatment he alleges he endured and his race. See Palesch v. Missouri Comm'n on Hum. Rights, 233 F.3d 560, 567 (8th Cir. 2000). Plaintiff fails to allege sufficient allegations of severe or pervasive harassment based on race. The Court grants Defendant's motion to dismiss Plaintiff's claims of racial harassment under § 1981.

### D. Constructive Discharge

Finally, Defendant moves to dismiss Plaintiff's claim of constructive discharge. In his Complaint, Plaintiff alleges he resigned after being repeatedly being accused of and investigated for sexual harassment, which were based on his race. As discussed above, Plaintiff alleges his conduct was not unwelcome, and that white employees engaged in the same or similar conduct but were not disciplined or even investigated. He alleges he was suspended for sexual harassment following a biased and defective investigation and quit after being notified by his manager that he was facing another suspension. Plaintiff accuses Coca-Cola of choosing to protect "white women" over him, an Afro-Hispanic man. (ECF No. 20 at 22).

Defendant moves to dismiss Plaintiff's claim for constructive discharge on the ground that he fails to allege working conditions what were sufficiently intolerable. "The constructive-

13

discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" Green v. Brennan, 578 U.S. 547, 555 (2016) (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004)). When an employee quits in the face of such circumstances, employment discrimination statutes treat the resignation "as tantamount to an actual discharge." Id. "[A] constructive discharge claim requires two basic allegations: discriminatory conduct by the employer that leads to resignation of the employee." Id. at 556.

The Court agrees with Defendant that under § 1981, an employee claiming constructive discharge "shoulders a substantial burden" to prove constructive discharge. Blake v. MJ Optical, Inc., 870 F.3d 820, 826 (8th Cir. 2017) (quoting O'Brien v. Dep't of Agric., 532 F.3d 805, 810–11 (8th Cir. 2008)).  But what a plaintiff must prove at trial or on summary judgment is not a pleading standard.  The question before the Court is whether, when liberally construing the Complaint, Plaintiff has alleged sufficient facts to state a plausible claim for constructive discharge.  Twombly, 550 U.S. at 555; Blomker, 831 F.3d at 1055.  See also Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) ("We refuse . . . to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of Iqbal and Twombly.").  Defendant has not cited persuasive authority showing that the allegations in Plaintiff's Complaint fail to sufficiently allege a claim for constructive discharge.  Defendant's motion is denied with regard to Plaintiff's claim for constructive discharge.

*V. Conclusion*

For the reasons stated above, the Court finds Defendant's arguments for dismissing Plaintiff's § 1981 racial discrimination claims of disparate treatment and constructive discharge are without merit. The Court does find Plaintiff's Complaint fails to allege sufficient facts to plausible state claims of harassment and retaliation under 42 U.S.C. § 1981.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Coca-Cola Company of North America's Motion to Dismiss is **GRANTED in part** and **DENIED in part.** The motion is **GRANTED** to the extent that the Court dismisses Plaintiff's claims of retaliation and racial harassment under 42 U.S.C. § 1981. In all other respects, the motion is **DENIED**. (ECF No. 27)

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this ___29th___ day of September 2023.